UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KELLIE KREBS, O/B/O BKN, a minor child,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>Defendant. | No. CV-11-3084-LRS<br><br>**ORDER RE SUMMARY JUDGMENT MOTIONS** |

**BEFORE THE COURT** are Plaintiff's Motion For Summary judgment (ECF No. 18) and Defendant's Motion For Summary Judgment (ECF No. 21).

**JURISDICTION**

On May 31, 2006, Plaintiff's mother, Kellie Krebs, protectively applied for Title XVI Supplemental Security Income benefits ("SSI") on behalf of her minor child, BKN, referred to herein as "Plaintiff." The application was denied initially and on reconsideration. After timely requesting a hearing, Plaintiff, represented by counsel, appeared before Administrative Law Judge ("ALJ") Richard Say on April 16, 2009. Plaintiff's mother testified at the hearing. On September 18, 2009, the ALJ issued a decision denying benefits. The Appeals Council granted a request for review and remanded the matter to the ALJ to: 1)

**ORDER RE SUMMARY JUDGMENT MOTIONS-**     1

give the claimant an opportunity for a new hearing and make findings as to whether cross examination of the consultative examiner was required; and 2) address all lay witness testimony, and provide germane reasons for discounting the testimony of such witnesses.

On October 13, 2010, a supplemental administrative hearing was held before ALJ Marie Palachuk. Counsel for Plaintiff supplemented the record and presented argument, but no witnesses testified. On November 5, 2010, the ALJ issued a decision denying benefits. The Appeals Council subsequently denied a request for review. This decision is appealable to district court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF FACTS

The facts have been presented in the administrative transcript, the ALJ's decision, the Plaintiff's and Defendant's briefs and will only be summarized here. At the time of the second administrative hearing, plaintiff was 10 years old and attending grade school. At the time he filed his application for benefits, the Plaintiff alleged disability due to enuresis, oppositional defiant disorder (ODD), separation anxiety and attention deficit hyperactivity disorder (ADHD).

## STANDARD OF REVIEW

"The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence, 42 U.S.C. § 405(g)...." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). "It means such relevant evidence as a reasonable mind might accept as adequate to support a

**ORDER RE SUMMARY JUDGMENT MOTIONS-**     2

conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Beane v. Richardson*, 457 F.2d 758, 759 (9th Cir. 1972); *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989), quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980); *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir. 1982).

It is the role of the trier of fact, not this court to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

A decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).

## ISSUES

Plaintiff argues the ALJ erred in determining that plaintiff's impairments do not functionally equal an impairment set forth in the Listing of Impairments. Additionally, Plaintiff argues the ALJ erred by not requiring the consultative examiner to attend the supplemental hearing and be subject to cross-examination by Plaintiff's counsel.

## DISCUSSION
### SEQUENTIAL EVALUATION PROCESS

An individual under the age of 18 is considered disabled if he "has a medically determinable physical or mental impairment, which results in marked

**ORDER RE SUMMARY JUDGMENT MOTIONS-**    **3**

and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

The Commissioner has established a three-step sequential evaluation process for determining whether a child is disabled. 20 C.F.R. §416.924. Step one determines if the child is engaged in substantial gainful activities. If he is, benefits are denied. 20 C.F.R. §416.924(b). If he is not, the decision-maker proceeds to step two, which determines whether the child has a medically severe impairment or combination of impairments. 20 C.F.R. §416.924(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which requires the child's impairment to meet, medically equal, or functionally equal an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1.[1] 20 C.F.R. §416.924(d). If the impairment meets or equals one of the listed impairments, the child is conclusively presumed to be disabled.

**ALJ'S FINDINGS**

The ALJ found that cross-examination of the consultative examiner, Jay M. Toews, Ed.D., was not necessary for "a full and true disclosure of the facts." Accordingly, Dr. Toews did not appear at the supplemental administrative hearing.

The ALJ found Plaintiff has not engaged in substantial gainful activity and has severe medically determinable impairments, those being adjustment disorder with anxiety and depressed mood, disruptive behavior disorder, ADHD, and parent-child relationship problems. The ALJ found, however, that these impairments do not meet or medically equal any of the listed impairments.

---

[1] Part B provides the medical criteria for the evaluation of impairments of children under the age of 18.

**ORDER RE SUMMARY
JUDGMENT MOTIONS-            4**

Furthermore, the ALJ found Plaintiff does not have an "extreme" limitation in any domain of functioning, does not have a "marked" limitation in two domains of functioning, and therefore, does not have impairments which functionally equal a listed impairment. The ALJ found that Plaintiff has less than a "marked" limitation in five of the six domains of functioning, and no limitation in the domain related to "Moving About And Manipulating Objects." Accordingly, the ALJ concluded the Plaintiff is not disabled.

**CONSULTATIVE EXAMINER**

A claimant is entitled to "cross-examination as may be required for a full and true disclosure of the facts." *Solis v. Schweiker*, 719 F.2d 301, 302 (9th Cir. 1983), quoting 5 U.S.C. §556(d). The ALJ has discretion to decide when cross-examination is warranted. *Copeland v. Bowen*, 861 F.2d 536, 539 (9th Cir. 1988). "Procedural due process requires that a motion to subpoena be granted 'where the [witness] is a crucial witness whose findings substantially contradict the other . . . testimony.'" *Bello v. Astrue*, 241 Fed. Appx. 426, 427 (9th Cir. 2007), quoting *Solis*, 719 F.2d at 302. An ALJ abuses her discretion when she denies a claimant's request to cross-examine a source where the source's report is "crucial" to the ALJ's decision. *Id.*

As the ALJ noted in her decision, the Plaintiff was afforded an opportunity to rebut the consultative examiner in writing and Plaintiff's mother did so in a letter dated September 6, 2009. (Tr. at pp. 24; 193-94). Plaintiff's mother reported what she considered to be numerous errors in Dr. Toews's report. The ALJ acknowledged the errors, but determined that cross-examination of Dr. Toews was not needed for a "full and true disclosure of the facts" because "the claimant ha[d] been provided ample opportunity to respond to the consultative examination report . . . and provided additional evidence of record at Exhibits 16E-18E, and 15F-20F." (Tr. at pp. 24; 195-199; 467-568). Because of the

errors pointed out by Plaintiff's mother, the ALJ gave no weight to Dr. Toews's opinion regarding the Plaintiff's functional abilities. According to the ALJ:

> Dr. Toews ['s] opinion regarding the claimant's functional abilities (i.e., he saw no area in which the child had limitations) is therefore given no weight. However, the valid testing results produced in that evaluation are given considerable weight in establishing that the claimant has average intellectual functioning with average writing, reading, and arithmetic abilities, consistent with the school records at Exhibit 1E and Teacher Questionnaire at Exhibit 5E.

(Tr. at p. 24).

At the supplemental administrative hearing, Plaintiff's counsel was allowed to present an argument why cross-examination of Dr. Toews was necessary. Counsel said cross-examination was necessary to clarify the inconsistencies in Dr. Toews's report (Tr. at p. 55), but as noted above, the ALJ was aware of the inconsistencies pointed out in the letter from Plaintiff's mother and because of that, gave no weight to Dr. Toews's opinion regarding the Plaintiff's functional abilities. Counsel also noted that additional medical evidence had been submitted and contended this evidence clarified "discrepancies" in Dr. Toews's report. (*Id*. at pp. 55-56). Counsel did not, however, question the validity of the test results reported by Dr. Toews, nor indicate how cross-examination of Dr. Toews would shed additional light on those test results. Plaintiff's briefing filed in this court (ECF Nos. 19 and 23) is also silent in this regard. As explained herein, the test results do not substantially contradict other evidence in the record.

The court concludes the ALJ did not abuse her discretion in failing to subpoena Dr. Toews to appear at the supplemental hearing and submit to cross-examination by Plaintiff's counsel.

**FUNCTIONAL EQUIVALENCE**

If an impairment does not meet or medically equal any listing, it may still result in limitations that functionally equal a listing. An impairment functionally

**ORDER RE SUMMARY JUDGMENT MOTIONS-**            6

equals a listing if it is of listing-level severity. An impairment is of listing-level severity if it results in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R.§416.926a(a). Six "domains" are considered, including: (1) Acquiring And Using Information; (2) Attending And Completing Tasks; (3) Interacting And Relating With Others; (4) Moving About And Manipulating Objects; (5) Caring For Yourself; and (6) Health And Physical Well-Being. 20 C.F.R. Section 416.926a(b)(1).

A "marked" limitation exists when impairments "seriously" interfere with the ability to independently initiate, sustain, or complete activities. Day-to-day functioning may be seriously limited when impairments limit only one activity or when the interactive and cumulative effects of impairments limit several activities. A "marked" limitation is "more than moderate," but "less than extreme" and is the equivalent of functioning expected to be found on standardized testing with scores that are at least two, but less than three, standard deviations below the mean. 20 C.F.R. §416.926a(e)(2).

An "extreme" limitation exists when impairments "very seriously" interfere with the ability to independently initiate, sustain, or complete activities. Day-to-day functioning may be very seriously limited when impairments limit only one activity or when the interactive and cumulative effects of impairments limit several activities. "Extreme" limitation is the rating given to the worst limitations, although it does not necessarily mean a total lack or loss of ability to function. It is the equivalent of functioning expected to be found on standardized testing with scores that are at least three standard deviations below the mean. 20 C.F.R. §416.926a(e)(3).

The results of the testing of the Plaintiff conducted by Dr. Toews are consistent with the Plaintiff's school records. Plaintiff's WRAT-IV scores fell within the average range and were at the third grade level, consistent with the Plaintiff just having completed the third grade. His WISC-IV scores indicated he

1 was in the average range of intelligence. (Tr. at p. 451). School records from
2 when Plaintiff was in kindergarten indicated he was "[n]ot a behavior problem at
3 school" and that there was "no educational impact at this time." (Tr. at p. 133).
4 School records from when Plaintiff was in the first grade indicated Plaintiff's
5 "skills are below grade level, but he is making good progress" and "[h]e tries to
6 learn, listen and use his time well." Furthermore, they indicated Plaintiff was a
7 "good student" and had "shown . . . no evidence of a disability." (Tr. at pp. 154-
8 161).

Records from YVFWC (Yakima Valley Farmworkers Clinic) Behavioral Health Services, where Plaintiff's treating psychiatrist, George Petzinger, M.D., is located, consistently bear out that Plaintiff does not have difficulty at school, either academically or behaviorally. During Plaintiff's first visit to Behavioral Health Services in March 2006, his mother stated "he does not have problems with his behavior at school." (Tr. at p. 220). Thereafter, the records include the following comments: "doing well at school" (Tr. at p. 250); Plaintiff says "he is doing well in school" and mother says he is doing his homework (Tr. at p. 258); "[s]chool has remained a place where he is functioning well and able to manage his frustration" (Tr. at p. 264); "has been doing well in school since meds have been increased" (Tr. at p. 319); "[h]e has been getting 'green' in class, which is the best behavior" (Tr. at p. 321); "doing better in school and has recently gotten a paper sayign [sic] that he been well focused in school" (Tr. at p. 328); "doing well in school . . . has not been in trouble at school . . .has also been getting his work done" (Tr. at p. 339); school performance "fairly good" (Tr. at p. 344); "doing well at school" (Tr. at p. 355); "not getting in trouble at school [and] [m]oved up a grade in reading" (Tr. at p. 364); "doing much better in school . . . and having some success in reading" (Tr. at p. 365); "doing well at school academically" (Tr. at p. 371); "doing OK in school" (Tr. at p. 380); "doing very well at school" (Tr. at p. 383); "got a reading award" (Tr. at p. 389); "doing well

at school" (Tr. at 393); "in school and doing well" (Tr. at p. 484); "[n]o discipline problems in school" (Tr. at p. 493); "[h]e has not been getting into trouble as school, and passed his WASL [Washington Assessment Of Student Learning]; [h]e doesn't fight with kids at school during recess" (Tr. at p. 495); "[he] hasn't been getting in trouble at school" (Tr. at p. 497); received an award in school for "perseverance" (Tr. at p. 502); "[he] is doing OK in school" and mother "stated he will do OK at school" (Tr. at p. 504); "[h]e hasn't been having problems in school" (Tr. at p. 506); "managing fairly well at school" (Tr. at p. 520); "doing better in school and proud to tell me this" (Tr. at p. 526); "doing well in the school" (Tr. at p. 540; p. 547 and p. 562).  Plaintiff informed Dr. Toews he had won a number of awards in school for good citizenship and for being "Student of the Month," and that his grades were good. (Tr. at p. 450).

Dr. Petzinger consistently assigned the Plaintiff a CGAS (Child Global Assessment Score) of 42[2], indicating a moderate degree of interference in social functioning.[3] (Tr. at p. 467). More specifically, the 41-50 range indicates:

> Moderate degree of interference in functioning in most social areas or severe impairment of functioning in one area, such as might result from, for example, suicidal preoccupations and ruminations, school refusal and other forms of anxiety, obsessive rituals, major conversion symptoms, frequent anxiety attacks, poor or inappropriate social skills, frequent episodes of aggressive or other

///
///
///
///

---

[2] The therapist, Dianne Alexander, M.S.W., consistently gave the Plaintiff a score of 42.

[3] The CGAS is the child equivalent of a GAF (Global Assessment of Functioning) score for an adult.  Schafer D, Gould MS, Brasic J, et al., (1983), A children's global assessment scale (CGAS). *Archives of General Psychiatry*, 40, 1228-1231.

**ORDER RE SUMMARY JUDGMENT MOTIONS-**       9

        antisocial behavior with some preservation of meaning-
        ful social relationships.[4]

Dr. Petzinger also indicated, however, that there was more than a moderate degree of interference with Plaintiff's social functioning. In July 2010, Dr. Petzinger completed a form in which he opined regarding Plaintiff's functioning level in each of the six domains identified in social security regulations. He opined that Plaintiff has no limitation in acquiring and using information; a marked limitation in attending and completing tasks; a marked limitation in interacting and relating with others; no limitation in moving about and manipulating objects; a marked limitation in his ability to care for himself; and an extreme limitation related to his health and physical well-being in that his "medication does not cause serious side effects, but he has nearly continuous severely impairing disruptive behavior associated with anxiety." Dr. Petzinger indicated these limitations have existed since at least May 2002. (Tr. at pp. 566-68).[5]

Plaintiff acknowledges that his "school records do not indicate the severe limitations that Dr. Petzinger reports," but asserts that "evidence of the disability is not limited to school hours" and "evidence of school behavior does not

---

[4]A CGAS from 31-40 represents:

    Major impairment of functioning in several areas and unable to function in one of these areas i.e., disturbed at home, at school, with peers, or in society at large e.g. persistent aggression without clear instigation; markedly withdrawn and isolated behavior due to either mood or thought disturbance, suicidal attempts with clear lethal intent; such children are likely to require special schooling and/or hospitalization or withdrawal from school (but this is not a sufficient criterion for inclusion in this category).

[5]In January 2009, Dr. Petzinger indicated Plaintiff had less than a marked limitation in acquiring and using information; a marked limitation in attending and completing tasks; a marked limitation in interacting and relating with others; no limitation in moving about and manipulating objects; an extreme limitation in his ability to care for himself; and a marked limitation related to his health and physical well-being. He indicated these limitations had existed since Plaintiff's birth. (Tr. at pp. 444-446).

**ORDER RE SUMMARY JUDGMENT MOTIONS-**       **10**

automatically contradict evidence that his disability is more severe outside of school." (ECF No. 19 at p. 12). While it may not "automatically contradict evidence that his disability is more severe outside of school," it is nevertheless significant. There is no evidence in the record that Plaintiff attended special education classes or participated in an individualized education program at school. Social security regulations recognize that the functional limitations of a child may be lessened when he is in such a structured setting. 20 C.F.R. §416.924a(b)(iv). Because the evidence indicates that Plaintiff was in a regular classroom without any kind of accommodation, his school performance- both academically and behaviorally- was legitimately considered by the ALJ in determining Plaintiff's functional limitations. Furthermore, there is evidence indicating that even outside of school, the Plaintiff was engaging in certain activities (scouting and soccer) suggesting his functional limitations are less than marked. (Tr. at pp. 287; 291; 296; 305; 314; 364; 365; 370; 382; 383; 388; 389; 393; 415; 420; 422 and 423 ). Plaintiff's participation in these activities is referenced in the YVFWC Behavioral Health Services records.

It is settled law in the Ninth Circuit that in a disability proceeding, the treating physician's opinion is given special weight because of his familiarity with the claimant and his physical condition. *Benecke v. Barnhart,* 379 F.3d 587, 592 (9th Cir. 2004); *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996); *Smolen v. Chater,* 80 F.3d 1273, 1285-88 (9th Cir. 1996); *Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995); *Fair v. Bowen*, 885 F.2d 597, 604-05 (9th Cir. 1989). If the treating physician's opinion is not contradicted, it can be rejected only with clear and convincing reasons. *Lester,* 81 F.3d at 830. If contradicted, the ALJ may reject the opinion if specific, legitimate reasons that are supported by substantial evidence are given. *See Flaten*, 44 F.3d at 1463; *Fair*, 885 F.2d at 605. Because

the ALJ did not rely on Dr. Toews's opinion regarding the severity of Plaintiff's functional limitations, Dr. Petzinger's opinion regarding the same is uncontradicted. Nevertheless, the ALJ's reliance on Dr. Toews's test results, the educational records, and the references in the medical records to Plaintiff's consistently good school performance and participation in extracurricular activities (scouts and soccer), constitute clear and convincing reasons for discounting Dr. Petzinger's opinion. See also Social Security Ruling (SSR) 06-03p. The ALJ also noted the medical records indicate that, over the course of time, Plaintiff eventually became able and/or willing to function more independently- i.e., sleeping by himself, using the bathroom on his own, and sleeping over at a friend's house for the first time. (Tr. at pp. 319; 422; 467; 546; 561 and 562).

The same evidence constitutes clear and convincing reasons for the ALJ discounting the allegations of Plaintiff's mother concerning the severity of her son's functional limitations. *Smolen*, 80 F.3d at 1281-82. And it constitutes specific "germane reasons" for discrediting the testimony of Plainitiff's aunt. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).

"Substantial evidence" in the record- more than a scintilla, but less than a preponderance- supports the ALJ's determination that Plaintiff does not have an impairment or impairments which functionally equal a listed impairment. The ALJ's findings are supported by inferences reasonably drawn from the record, and her conclusion that Plaintiff is not disabled represents a rational interpretation of the evidence.

## CONCLUSION

Plaintiff's Motion For Summary Judgment (ECF No. 18) is **DENIED** and Defendant's Motion For Summary Judgment (ECF No. 21) is **GRANTED**.
///

**ORDER RE SUMMARY JUDGMENT MOTIONS-**      **12**

Pursuant to 42 U.S.C. §405(g), the Commissioner's decision denying benefits is **AFFIRMED**.

    **IT IS SO ORDERED.** The District Executive shall enter judgment accordingly and shall forward copies of the judgment and this order to counsel.

    **DATED** this __14th__ of December, 2012.

*s/Lonny R. Suko*

_____
LONNY R. SUKO
United States District Judge

**ORDER RE SUMMARY JUDGMENT MOTIONS-**     13